# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **BRIAN D'ALFONSO**, | : | **CIVIL ACTION NO. 1:09-CV-1033** |
| Petitioner | : | (Judge Conner) |
| v. | : | |
| **JERRY MARTINEZ**, | : | |
| Respondent | : | |

## **MEMORANDUM**

Petitioner Brian D'Alfonso ("D'Alfonso") filed the instant petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 on June 2, 2009, seeking an order compelling respondent to reconsider petitioner's request for pre-release custody placement in a residential re-entry center ("RRC") for the last twelve months of his sentence in accordance with the Second Chance Act of 2007. (Doc. 1). For the reasons that follow, the petition will be dismissed without prejudice for failure to pursue available administrative remedies.

## I. Background

D'Alfonso, a federal inmate presently incarcerated at the Low Security Correctional Institute at Allenwood ("LSCI-Allenwood"), was sentenced on February 3, 2005, in the United States District Court for the Eastern District of Pennsylvania. He is serving the remainder of a seventy-five month term of imprisonment for sixteen counts of mail fraud. (Doc. 10-2, "Inmate Skills Development Plan" at 6.) His projected release date is August 23, 2010, *via* good conduct time release. (Id.)

On April 9, 2008, the Second Chance Act of 2007, Pub. L. No. 110-199, Title II, § 251, 122 Stat. 657, 692 (the "Second Chance Act"), codified at 18 U.S.C. §§ 3621, 3624 was signed into law. The Act increases the duration of pre-release placement in an RRC from six to twelve months and requires the BOP to make an individual determination that ensures that the placement be "of sufficient duration to provide the greatest likelihood of successful reintegration into the community." 18 U.S.C. § 3624(c)(6)(C) (Apr. 9, 2008).

On December 29, 2008, D'Alfonso's Unit Team conducted a Program Review to discuss his anticipated RRC placement. (Doc. 10-2, Declaration of Mara Hause ("Hause Dec.", Federal Bureau of Prisons case manager at LSCI-Allenwood, at 3, ¶ 1.) On December 30, 2008, it was recommended that he be transferred to an RRC between five and six months prior to his release date. (Id. at 5, ¶ 6.) The Inmate Skills Development Plan included "a review of inmate D'Alfonso's academic history, noting he had a college degree and computer skills; his employment/career history; relationships with his family; as well as his health, among other factors" (id. at 3, ¶ 3), and stated that "[p]ursuant to the Second Chance Act, the Unit Team has determined the recommended placement is of sufficient duration to provide the greatest likelihood of successful reintegration into the community. In addition, this recommendation is in accordance with Woodall v. Federal Bureau of Prisons, and the criteria set forth in [BOP] Program Statement 7310.04." (Doc. 10-2, "Inmate Skills Development Plan" at 5.)

2

D'Alfonso argues that he did not pursue his administrative remedies "because the administrative remedy process in and of itself is a time consuming process which by the conclusion of such process would surely render a denial of relief sought and cause any legal filing to be moot because his remaining sentence would barely cover the original (06) month referral." (Doc. 12, at 4.)

## II. Discussion

The habeas statute upon which petitioner relies to challenge his the timing of his pre-release placement, 28 U.S.C. 2241, unlike other federal habeas statutes, "confers habeas jurisdiction to hear the petition of a federal prisoner who is challenging not the validity but the execution of his sentence." Coady v. Vaughn, 251 F.3d 480, 485 (quoting 28 U.S.C. §§ 2241(a)( and (c)(3)). The United States Court of Appeals for the Third Circuit has concluded that section 2241 is the appropriate means for challenging a decision to exclude an inmate from release to an RRC. See Woodall v. Federal Bureau of Prisons, 432 F.3d 235, 242 (3d Cir. 2005.)

Although Section 2241 does not contain a statutory exhaustion requirement, courts in the United States Court of Appeals for the Third Circuit have consistently required an inmate to exhaust his administrative remedies prior to petitioning for a writ of habeas corpus. Moscato v. Fed. Bureau of Prisons, 98 F.3d 757, 760 (3d Cir. 1996) (citing Bradshaw v. Carlson, 682 F.2d 1050, 1052 (3d Cir. 1981) (per curiam)); e.g., Callwood v. Enos, 230 F.3d 627, 634 (3d Cir. 2000). Exhaustion is required for the following reasons: "(1) allowing the appropriate agency to develop a factual record and apply its expertise facilitates judicial review; (2) permitting agencies to

3

grant the relief requested conserves judicial resources; and (3) providing agencies the opportunity to correct their own errors fosters administrative autonomy." Moscato, 98 F.3d at 761-62 (3d Cir. 1996) (citations omitted).

The exhaustion procedure to be utilized by federal inmates is the administrative remedy protocol established by the Bureau of Prisons ("BOP") and set forth at 28 C.F.R. §§ 542.10-542.19. Pursuant to this protocol, an inmate first must present his complaint to staff, and staff must attempt to resolve informally any issue before an inmate files a request for administrative relief. See § 542.13(a). If informal resolution proves unsuccessful, the inmate may raise the complaint with the warden of the institution where he or she is confined. See id. An inmate has twenty calendar days from the date of the alleged injury within which to complete this informal resolution process. See § 542.14(a). If an inmate is dissatisfied with the response received during the informal resolution process, he or she may appeal the decision to the Regional Office and the General Counsel of the BOP. See § 542.15. A BOP decision is not final—and thus not reviewable—until relief has been denied by the General Counsel's Office. Id. If at any point an inmate misses a deadline imposed by federal regulations, BOP policy requires that the inmate seek an extension of time within which to file his or her grievance. See § 542.14(b). Acquisition of an extension requires that an inmate provide a "valid reason for the delay." Id.

According to BOP records, D'Alfonso failed to exhaust his administrative remedies regarding his pre-release placement. (Doc. 10-2, Declaration of L.

4

Cunningham ("Cunningham Dec."), BOP supervisory attorney designated to LSCI-Allenwood, at 16, ¶ 1.) In response, D'Alfonso indicates that he was not advised of the RRC placement until the second week of May 2009, and, at that time, because he disagreed with the recommendation, after conducting some legal research he "immediately" began work on his federal petition. (Doc. 12, at 4.)

In an effort to excuse the exhaustion requirement, he argues that the administrative remedy process is a time consuming process which would result in a denial of relief and "cause any legal filing to be moot because his remaining sentence would barely cover the original (06) month referral." (Id.) Exhaustion of administrative remedies is not rendered futile just because a prisoner anticipates he will be unsuccessful in his administrative appeals before the twelve-month pre-release mark, which is simply a statutory maximum and not a mandate. See 18 U.S.C. 3624(c)(1)-(6). Even accepting the fact that he was not notified of the RRC placement until May 2009, he still had adequate time to exhaust his administrative remedies prior to seeking relief in federal court. See Malvestuto v. Martinez, No. 09-1339, 2009 WL 2876883 (M.D.Pa., September 01, 2009) (dismissing petition for failure to initiate administrative review); see Torres v. Martinez, No. 09-1070, 2009 WL 2487093 (M.D.Pa. August 12, 2009) (same); Shoup v. Schultz, No. 08-3821, 2009 WL 1544664 at * 3 (D.N.J. June 2, 2009) (same); Cooper v. Grondolsky, No. 09-2970, 2009 WL 2049168 at *4 (D.N.J. July 08, 2009) (refusing to excuse petitioner's failure to at the very least submit an administrative remedy request to the Warden); Breazeale v. Shultz, 09-2118, 2009 WL 1438236 at *3 (D.N.J. May 19, 2009) (same);

Miceli v. Martinez, No. 08-1380, 2008 WL 4279887 (M.D.Pa. Sept. 15, 2008) (dismissing petition without prejudice for failure to exhaust administrative remedies).

D'Alfonso also refers to the case of Strong v. Schultz, 599 F. Supp.2d 556 (D.N.J. 2009), a district court case in which the court directed the Bureau of Prisons immediately to reconsider the petitioner for RCC placement for a period of longer than six months. However, any reliance on Strong in this instance is misplaced because unlike D'Alfonso, the petitioner in Strong fully exhausted available BOP administrative remedies prior to filing a petition in federal court.[1]

Inasmuch as he argues that exhaustion would be futile because of the policy set forth in a BOP memorandum dated April 14, 2008, his argument is without merit. On April 14, 2008, five days after enactment of the Second Chance Act, the BOP issued a memorandum which provided that in the event that staff determine an inmate's pre-release RRC placement may require greater than six months, the Warden must obtain the Regional Director's written concurrence before submitting the placement to the Community Corrections Manager. Strong, 99 F. Supp.2d 556. This memorandum was in place when Strong's pre-release placement was

---

[1] The petitioner in Strong successfully utilized the BOP's administrative remedy process in that his pre-release placement time was increased from sixty days to six months. Strong, 599 F. Supp.2d at 560. Even so, he filed a federal petition seeking twelve-month pre-release placement because he had been diagnosed with HIV/AIDS and needed to obtain medical care and substance abuse treatment before securing employment. Id.

6

considered. On October 21, 2008, the BOP adopted a new regulation entitled "Time-frames", which authorizes BOP staff to designate inmates to a CCC or RRC for the final 12 months of the sentence without obtaining permission from the Regional Director. See 28 C.F.R. § 570.21(a) (Oct. 21, 2008) ("Inmates may be designated to community confinement as a condition of prerelease custody and programming during the final months of the inmate's term of imprisonment, not to exceed twelve months"). This regulation was in effect when D'Alfonso's pre-release placement was considered, not the April 14, 2008 memorandum.

## III. Conclusion

Based on the foregoing, the petition for writ of habeas corpus will be dismissed without prejudice for failure to pursue administrative remedies.

An appropriate order follows.

       S/ Christopher C. Conner
       CHRISTOPHER C. CONNER
       United States District Judge

Dated:       September 30, 2009

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **BRIAN D'ALFONSO,** | : | CIVIL ACTION NO. 1:09-CV-1033 |
| Petitioner | : | (Judge Conner) |
| v. | : | |
| **JERRY MARTINEZ,** | : | |
| Respondent | : | |

## **ORDER**

AND NOW, this 30th day of September, 2009, upon consideration of the petition for writ of habeas corpus (Doc. 1), it is hereby ORDERED that:

1. The petition (Doc. 1) is DISMISSED without prejudice.

2. The Clerk of Court is directed to CLOSE this case.

         S/ Christopher C. Conner
         CHRISTOPHER C. CONNER
         United States District Judge